GEORGE M. POE ET AL. v. JOHN BROWNRIGG ET AL.

(Case No. 2736.)

1. COMMUNITY PROPERTY.— A married man, to whom was issued, as such, a land certificate for a league and labor of land, in 1838, transferred it during the life-time of the wife by the following assignment: " I, for myself, my heirs, legal representatives and assigns, sell, relinquish and dispossess myself of all my right, title and interest for the within claim to Wm. M. Shepherd, his heirs and assigns." In a suit against the claimants of the entire league and labor under that assignment, brought by those claiming the community interest of the wife, held,

(1) The certificate being community property, the husband's right to dispose of it was absolute.

(2) His conveyance of " all his right " was a conveyance of the entire certificate.

2. PRACTICE.— The improper submission to a jury of the construction of an instrument in writing affords no ground for reversal, when the judgment rendered was manifestly correct.

APPEAL from Travis. Tried below before the Hon. J. P. Richardson.

Suit instituted in April, 1874, by the appellants, claiming as heirs of Frances E. Poe, wife of George W. Poe, an undivided half of George W. Poe's headright league and labor of land, against Brownrigg & Hatch, who claimed to be owners of the other half, and to whom the patents were issued for the whole league and labor; and praying partition of the same, and that their title be established. The land was located in two surveys.

The defendants pleaded a general denial. They further aver that the certificate upon which the land was located was sold by George W. Poe on the 2d of April, 1838, during the existence of the marriage of George and Frances, to Wm. M. Shepherd, eight or ten years before it was located. They also pleaded the statute of limitations and that plaintiffs' demand was stale.

In amended petitions, plaintiffs alleged that the lands

sued for were located by virtue of the certificate; that the certificate was "ganancial property" of George and Frances; that George agreed with Shepherd to locate it and get out patent to the same for one-half, the other half to be for the benefit of Mrs. Poe. That the transfer to Poe was intended as a transfer of only one-half.

The transcript contains numerous pleas and averments, but as there was no ruling by the court upon them, nor evidence produced under them, they will not be noticed.

The case was submitted to a jury, who found for the defendants; and a motion made for a new trial was overruled.

On the trial, the facts proven were, for the plaintiff:

The original certificate to George W. Poe for one league and labor of land, issued March 17, 1838.

A transfer indorsed thereon as follows:

"I, for myself, my heirs, legal representatives and assigns, sell, relinquish and dispossess myself of all my right, title and interest for the within claim to Wm. M. Shepherd, his heirs and assigns.

(Signed)                          "GEO. W. POE.  [L. S.]

"Witnesses:  D. CARROLL BRENT, ROBERT PAGE.

"Houston, April 20, 1838."

Appended thereto were the proofs of its execution.

It was shown that Mrs. Poe had made advertisement of the loss of this certificate, and obtained a duplicate from the land office, but afterwards cancelled it, the original having been returned.

It was admitted that George and Frances were married. They lived together in Texas from 1836 to 1839, and that he died in 1844; that Frances died in 1871; that the plaintiffs are her sole heirs.

The field notes of the surveys upon the original certificate, made October 18, 1853, and January 10, 1854, were read. Upon these, the land was patented to Brownrigg & Hatch, assignees.

This is all the testimony introduced upon the trial material to the issue involved.

The assignments of error are:

1. That the court erred in charging the jury "that if George W. Poe did sell the whole certificate to Shepherd, that he intended to convey the interest of his wife as well as his own, then you will find for the defendant."

2. And in charging that every allegation which is material must be proved.

3. In submitting to the jury the question of law involved in the construction of the transfer by George W. Poe, without instructing them as to the legal force and effect of the same in connection with the consideration for the same alleged in plaintiffs' petition, and not denied; failing to separate questions of law and fact.

4. In overruling the motion for a new trial.

5. In rendering judgment for defendant.

*G. R. Freeman* and *Moulton & Doom,* for appellants.— That Geo. W. Poe and his wife each had a distinct and individual interest or right of property in the certificate, amounting to one-half the whole, is too well settled by the decisions of this court to be questioned. Babb *v.* Carroll, 21 Tex., 767; Wood *v.* Wheeler, 7 Tex., 19, 20; Wright *v.* Hays, 10 Tex., 133.

And when Geo. W. Poe expressly sold and relinquished his own interest, right and title, prefacing the words of conveyance by the words, "I, for myself, my heirs, legal representatives and assigns," he clearly excluded the idea that he was selling for his wife. That he had the power to sell her interest, if he had chosen to do so, is not to be questioned; and, had he used language indicating a purpose to sell the certificate as a whole — had he used the words, "I sell and convey the within claim to Wm. M. Shepherd," there could (it may be) have been no question that he included his wife's interest. But he chose to use

the words of a mere quit-claim deed, universally employed to indicate a qualified or restricted conveyance, to wit, the words "relinquish . . . my right, title and interest;" and that in reference to a thing in which he confessedly had but an interest of one-half. And, as if careful to make it beyond question that he was not selling for his wife, he prefaced the words of conveyance by cautionary words, expressly showing for whom he was selling. He said, "I, for myself, my heirs, legal representatives, . . . sell, relinquish, . . . all my right, title and interest."

The sale and relinquishment of a man's right, title and interest in a thing are universally understood to mean a very different thing from an absolute sale of the thing itself. The use of these words raises the presumption that the seller is careful to sell only what he himself strictly owns in the thing, and no more. They have always been held as an advertisement to the party taking the conveyance that the vendor was not proposing to convey more than, in fact, he held in his own individual right. Hamman v. Keigwin, 39 Tex., 42; Carter v. Wise, id., 275; Rogers v. Burland, 34 Tex., 452, and cases therein cited.

*Fulmore & Wooldridge*, for appellees.

Quinan, J. Com. App.—This suit is brought by the heirs of Mrs. Poe to recover of the defendants one undivided half of a league and labor of land (in two surveys), patented to defendants Brownrigg & Hatch, as assignees of George W. Poe.

The land was located by virtue of George W. Poe's headright certificate for one league and labor, issued in 1838 to him, he being a married man.

The certificate was transferred by Poe during the life-

time of his wife. The transfer is indorsed on the certificate, and is as follows:

"I, for myself, my heirs, legal representatives and assigns, sell, relinquish and dispossess myself of all my right, title and interest for the within claim to Wm. M. Shepherd, his heirs and assigns.

"GEO. W. POE. [L. S.]

"Witnesses: D. CARROLL BRENT, ROBERT PAGE.

"Houston, April 20, 1838."

The claim of plaintiffs Poe and others is that this transfer does not convey but one-half of the certificate, and consequently that one-half the land belongs to them.

Manifestly this position is erroneous. The certificate was community property of Poe and wife, and during the life-time of the wife he had the absolute right to dispose of it. Wright v. Hays, 10 Tex., 130.

The transfer purports to sell and dispossess him of all "his right, title and interest" in it. His right was to dispose of the whole of it, and that he effectually did by the transfer and delivery of it.

The plaintiffs had no right to the land, and the verdict against them was the only one which could have properly been rendered. There was no proof impeaching the transfer. In fact, the plaintiffs' case rested solely upon the construction they put upon this transfer, and that construction was not sound.

Complaint is made of the charges of the judge. We think there was error in submitting the proper construction of the instrument to the jury, but that is an error of which the appellants cannot complain.

There is no error in the judgment, and it ought to be affirmed.

AFFIRMED.

[Opinion delivered April 29, 1881.]